The **PEOPLES BANK OF CLEVER,**
Plaintiff–Appellant,

v.

**Bill McFALL, Defendant–Respondent.**

No. 15615.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 26, 1988.

fendant Bill McFall, seeking an injunction requiring McFall to deliver to the bank the Manufacturer's Statement of Origin (the "MSO") on a certain mobile home purchased by one Houser from American Mobile Homes, Inc. ("American"). The "statutory trustee" of American was also named as a defendant, but service was not obtained on the trustee and the case proceeded against McFall alone.

The petition alleged that on September 27, 1986, the bank lent Houser and American the sum of $20,400 in connection with Houser's purchase of the mobile home from American and that Houser paid that sum to American. The petition contained no allegation of any agency relationship between McFall and American or between McFall and Houser.

The petition did allege that McFall, "in consideration of the loan proceeds paid to American," *promised to deliver* to the bank the MSO "which is necessary for [the bank] to obtain title to the [mobile home] and perfect its lien on said [mobile home]." The petition further alleged that McFall was still in possession of the MSO and that on January 26, 1987, the bank, through its counsel, demanded the MSO from McFall and he refused to deliver it.

McFall's answer generally denied the allegations of the petition, but McFall did allege that the mobile home and the MSO "are the rightful and lawful property of [McFall]."

The trial court, sitting without a jury, found the issues in favor of McFall. The bank appeals.

The bank's points are:

1. The trial court erred in finding that McFall was a guarantor required to perform under such guaranty because the undisputed evidence is that the alleged guaranty was forged.

2. The trial court erred in finding that McFall is entitled to the MSO "as being subrogated to the rights of General Electric Credit Corporation [the holder of the guaranty] because McFall paid on a forged and unenforceable instrument, McFall was not legally obligated to pay, and therefore McFall became a volunteer."

James L. Bowles, Springfield, for plaintiff-appellant.

James M. Kelly, Republic, for defendant-respondent.

FLANIGAN, Presiding Judge.

The Peoples Bank of Clever ("the bank"), plaintiff, brought this action against de-

3. McFall did not "meet the burden of proof necessary to establish that, as between McFall and the bank, in equity, the bank should bear the loss."

The guaranty, referred to in the bank's points, was appended to an "Inventory Financing Agreement" entered into between General Electric Credit Corporation ("G.E.C.C.") and American, by which G.E.C.C. extended a line of credit to American for the purpose of financing the acquisition of inventory. By the terms of the guaranty, McFall and his co-guarantor "jointly and severally" guaranteed to G.E.C.C. the payment of all obligations of American to G.E.C.C. arising out of the Inventory Financing Agreement. McFall admitted that the guaranty bore his signature as a guarantor. The MSO was received by McFall from G.E.C.C. after McFall had made payment under the guaranty.

During the course of his testimony McFall expressed the opinion that the signature of his co-guarantor, Frances K. Price, on the guaranty was forged. McFall said, "I think somebody else signed the signature of Frances K. Price."

The excellent brief of McFall accurately states:

"The bank's cause of action was based upon a purported contractual agreement between [the bank and McFall]. The petition did not seek any relief based upon the terms of [the guaranty], nor did the petition request that the court determine the rights of the parties thereunder nor declare the same to be a forged or unenforceable document. The bank was not a party to that agreement, made no reference to it in its petition, and was totally unaware of its existence at the time of the sale of the mobile home. [The petition] claimed that McFall promised to deliver the MSO to the bank in consideration of the payment of certain loan proceeds to American. No such evidence was adduced at trial. To the contrary, the evidence was undisputed that the bank had no contract or conversations with McFall prior to the sale and that McFall made no promise that he would ever surrender the MSO to the bank. Additionally, the evidence was clear that no agency relationship of any kind existed between McFall and American."

■ The bank's evidence failed to support the claim in its petition that McFall had promised to deliver the MSO to the bank. McFall positively denied making such a promise. The bank admitted that although its loan to Houser and American was made on September 27, 1986, no communication of any nature between the bank and McFall took place prior to November 1986. The bank also admitted, by an answer to an interrogatory, that it "could not say that McFall made a definite promise to deliver the MSO to the bank."

The trial court was at liberty to disbelieve the opinion of McFall that the signature of Frances K. Price on the guaranty was forged. McFall admitted that his own signature was genuine. Moreover, under the pleadings, no issue was made concerning the legality or even existence of the guaranty.

■ The bank was not a party to the guaranty and made no claim under any party who may have been defrauded by the alleged forgery. Long ago our Supreme Court said:

"Generally speaking, 'A stranger to the transaction who does not claim under the party defrauded has no right of action.... One may purchase a cause of action at law and enforce all legal rights which go with it, but the right to appeal to the conscience of a court of equity cannot be bought or sold.'"

*De Tienne v. Peters*, 354 Mo. 166, 188 S.W.2d 954, 955–956[1, 3] (1945). See also *Hatch v. Rhyne*, 253 S.W.2d 170, 172[1] (Mo.1952); 37 C.J.S. Fraud, § 60b, p. 344. None of the bank's points is meritorious.

McFall's motion for damages for frivolous appeal filed under Rule 84.19, V.A.M.R., is denied.

The judgment is affirmed.

HOGAN, MAUS and PREWITT, JJ., concur.